Morphy, J.
This suit was brought upon a protested note for $16,000, drawn by the defendant to the order of, and endorsed by, John D. Bein, her husband. A judgement by default was entered up against both of the defendants. On its being made final, an appeal was taken by Catharine Bein. It is urged in her behalf in this court, that the note drawn by her in favor of her husband was a nullity in his hands, and that the rights of the plaintiffs, to whom he had endorsed it, were no better than his. There being no evidence in the record of the circumstances under which the contract had been made, the cause was remanded with a view to allow the plaintiffs an opportunity of placing before us all the facts in relation to it, and of showing, if they could, that the present was one of those cases in which a married woman can validly bind -herself with her husband under their charter. 4 Rob. 225. it appears from the record now brought up, that, on or about the 17th of November, 1841, C. Adams, Jun., being the owner of six hundred and forty shares of the capital stock of the Exchange Bank, and being desirous of transferring them to the defendant, Catharine Bein, applied to the board to substitute her name to his on a stock note for $16,000, which he owed to the Bank, that sum being the price she had agreed to pay for the stock. The application having been granted, the stock was transferred to the defendant, Catharine Bein, on the books of the corporation. She pledged it to the Bank, and offered for discount upon this pledge a note, of which the one now sued on is a renewal. It was discounted, and the proceeds placed to her credit. She drew a check for the amount, and with it Adams took up his note. At the meeting of the board which granted Adams’ application and discounted the note, there were only four directors present. It it not shown that the defendant, Catharine, was ever separated in property from her husband, John D. Bein, who, after paying $3000 on the note sued on, became a bankrupt on the 6th of December, 1842, and was dis *582 charged from all debts contracted prior to that date. There was a judgment below in favor of the defendant, and the plaintiffs appealed.
There being a community of gains and acquests between Catharine Rein and her husband, any property purchased during the marriage belonged of right to such community, of which he was the head and master. It matters not, according to art. 2371 of the Civ. Code, whether the purchase be made in the name of one of the spouses or of both. In like manner all debts contracted during the marriage, were community debts. Art. 2372. If a purchase is made, or a debt contracted in the name of the wife, duly authorized by her husband, the contract is valid, and is as binding on the community as if it had been made by the husband himself; but. the wife thereby incurs no personal responsibility, nor does she become the owner of the property thus bought. This court has, however, often recognized an exception to this general rule, in relation to the purchase of property in the name of the wife: when it is paid for with her paraphernal funds under her separate administration, or when it is received as a da-iion en payement, made to her by a debtor of a separate and paraphernal claim of hers, the property does not belong to the community, but she becomes the separate and exclusive owner of it. 1 La. 521. 17 La. 300. 1 Rob. 367. In the present case, the stock purchased during the marriage has not been paid for by the wife, in whose name it was bought; a part of the price has been, paid by the husband ; and the question is, whether she can be personally held for the balance. We are clearly of opinion that she cannot. If, on the one hand, the wife, as long as the community exists, can make no claim to any part of its property ; she cannot, on the other hand, be sued for any of its debts, for which the husband, as the head and master of the community, is alone responsible. Her interest in the community is only eventual and contingent, and is to be ascertained upon its dissolution ; it is only then that she becomes entitled to one-half of the property, and at the same time responsible for one-half of the debts, (Civ. Code, arts. 2375, 2378); but she then has the privilege of exonerating herself from such debts, by renouncing the partnership or community of gains. Ib. art. 2379. If, before *583 the dissolution of the community by the death of one of the spouses, the wife has the right of praying for a separation of property, it is not to release herself from any personal liability for the debts of the community, because she can incur none; but it is to protect her dowry and other claims when the disorder of the affairs of her husband induces her to fear that they might be endangered. Ib. art. 2393. If then the defendant, Catharine Bein, has clearly incurred no personal responsibility by the mere fact of contracting this debt in her own name, because it is a community debt, it is equally clear that she could not, in any manner, bind herself with her husband for the payment of the same. Ib. art. 2412. 1 Rob. 218. 4 Rob. 115. It is, moreover, in evidence, that John D. Bein, the head of the community, has been discharged from all its debts under a decree of bankruptcy. It is difficult to perceive how the defendant, Catharine'Bein, can have remained responsible for this community debt, when it has, with all others contracted before the 6th of December, 1842, been discharged and extinguished. But it is urged, that the language of the 27th section of the charter of the Exchange Bank is broad enough to cover all obligations entered into by the wife with her husband, even for his, or the community’s debts. We do not think so. The section relied on provides, “ that in all hypothecary contracts or obligations entered into by any individual with, or in favor of, the president and directors of the Exchange Bank, according to the true intent and meaning of this act, it shall be lawful for the wife of such individual to bind herself jointly and in solido with him,” &c. The terms of this enactment clearly restrict it to the class of contracts and obligations therein described; and a reference to the 10th section of the same charter, which authorizes loans on land and slaves to be secured by mortgage, shows what were the hypothecary contracts and obligations that might be entered into according to the true intent and meaning of the act. The language used surely excludes the idea, that the wife could bind herself with her husband, in all kinds of contracts or obligations whatever. Some reliance is placed upon the French text of the charter, in which the term obligations does not seem to be qualified by the expression hypothecates; but on an examination of other charters, contain *584 ing similar provisions in relation to married women, it will be seen, that the French test relied on is a bad translation of the English, which appears to us free from any ambiguity ; but even if there were any doubt, this provision in favor of the Bank being in derogation of the general rule as laid down in art. 2412 of the Civ. Code, should be strictly construed, and should not be made to extend to cases not coming clearly within its purview. Under this view of the subject, we have found it unnecessary to inquire into the question raised as to the illegality of the transfer of the stock, and the consequent want of consideration of the note-sued on.

Judgment affirmed.

*

TzTm\

44 437

 Bonford, prayed for a re-hearing, for the purpose of obtaining a modification of the judgment so as to leave the rights of the Bank against Adams unaffected, by declaring the contract between them and the defendants absolutely void ; contending that there was no contract for the want of consent, the Bank and Adams never having intended to contract with Catharine Bein as the agent of her husband, or as representing' the community.

Re-hearing refused.